NATIONAL LABOR RELATIONS BOARD
v. COWELL PORTLAND CEMENT CO.

No. 10374.

Circuit Court of Appeals, Ninth Circuit.
March 6, 1945.

Rehearing Denied April 23, 1945.

For former opinion, see 108 F.2d 198.

Robert B. Watts, Gen. Counsel, Howard Lichtenstein, Asst. Gen. Counsel, Ernest A. Gross, Associate Gen. Counsel, and Roman Beck and Marcel Mallet-Prevost, Attys., National Labor Relations Board, all of Washington, D. C., for petitioner.

Max Thelen, Gordon Johnson, and Thelen, Marrin, Johnson & Bridges, all of San Francisco, Cal., for respondent Cowell Portland Cement Co.

Charles J. Janigian, of San Francisco, Cal., for United Cement, Lime and Gypsum Workers.

Before GARRECHT, MATHEWS, and STEPHENS, Circuit Judges.

MATHEWS, Circuit Judge.

Respondent, Cowell Portland Cement Company, a corporation, was at all pertinent times engaged in the business of manufacturing cement at a plant located at Cowell, Contra Costa County, California. It also operated a ranch called Rancho de los Cowell. On and after May 27, 1937, some of respondent's employees were members of International Union, Mine, Mill & Smelter Workers of America, Local No. 356, a labor organization hereafter called Local 356. Between August 26, 1937, and October 28, 1939, some of respondent's employees were members of Lime & Cement Employees Union of Contra Costa County, No. 21074, a labor organization hereafter called Local 21074. On and after October 28, 1939, some of respondent's employees were members of United Cement, Lime & Gypsum Workers International Union, Local No. 86, a labor organization hereafter called Local 86.

On July 17, 1937, Local 356 filed with petitioner, the National Labor Relations Board, a charge that respondent had engaged in and was engaging in unfair labor practices listed in § 8 of the National Labor Relations Act, 29 U.S.C.A. § 158. On August 9, 1937, Local 356 filed a supplemental charge. On August 20, 1937, the Board issued a complaint and caused it to be served on respondent. Respondent answered the complaint on September 24, 1937. On October 2, 1937, Local 356 filed an amended charge. On October 4, 1937, the Board issued an amended complaint which respondent answered on October 6, 1937. On October 7, 1937, the Board issued a second amended complaint which respondent answered on October 11, 1937. A hearing was had, and on September 6, 1938, the Board[1] issued an order and caused it to be served on respondent. On February 6, 1939, the Board petitioned this court for enforcement of the order of September 6, 1938. In this court, Local 21074 was permitted to, and did, intervene. Respondent and Local 21074 answered the petition and prayed that the order of September 6, 1938, be set aside. A hearing was had, and on November 28, 1939, this court[2] remanded the proceeding to the Board for such further action as it might deem proper.

On February 16, 1940, the Board[3] set aside the order of September 6, 1938. On May 8, 1940, Local 356 filed a second amended charge. On May 11, 1940, the Board issued a third amended complaint, hereafter called the complaint, and caused it to be served on respondent and Local 86. Respondent answered the complaint on July 27, 1940. Local 86 answered it on July 30, 1940. A hearing was had, and on April 18, 1942, the Board[4] issued an order and caused it to be served on respondent. On February 23, 1943, the Board petitioned this Court for enforcement of the order of April 18, 1942, hereafter called the order. Answering the petition, respondent and Local 86 pray that the order be set aside.

The order was based on the findings and conclusions hereinafter discussed.

The Board found that on July 16, 1937, a majority of respondent's employees[5] were members of Local 356 and had designated it as their representative for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment and other conditions of employment;[6] that on July 16, 1937, and at

1 8 N.L.R.B. 1020.

2 108 F.2d 198.

3 20 N.L.R.B. 454.

4 40 N.L.R.B. 652.

5 When we speak of respondent's employees, we mean only those who were found by the Board to constitute an appropriate collective bargaining unit. The Board found, and the finding is not challenged, that, with specified exceptions, all employees of respondent at or about its Cowell plant constituted such a unit. The excepted employees were executives, supervisory employees of the rank of foremen and above, persons having the right to hire and discharge, hospital employees, watchmen, guards and those employed at Rancho de los Cowell; also, after May 1, 1938, shovel operators and oilers; also, after July 22, 1938, truck drivers and tractor operators.

6 Section 9(a) of the National Labor Relations Act, 29 U.S.C.A. § 159(a), provides: "Representatives designated or selected for the purposes of collective bargaining by the majority of the em-

all times thereafter, Local 356 was, for the purposes mentioned, the exclusive representative of respondent's employees; and that on July 16, 1937, and at all times thereafter, respondent refused to bargain collectively with Local 356 as such representative. These findings are supported by substantial evidence and hence are conclusive.[7]

The Board found that on July 16, 1937, respondent shut down its plant and discharged 172 employees—Manuel Gonzales and 171 employees (including J. A. Burt, H. Carter, W. Manos and L. Marseu) listed in Appendix A attached to the order. Except as to Burt, Carter, Manos and Marseu, this finding is supported by substantial evidence and hence is conclusive. The evidence shows that Burt, Carter, Manos and Marseu were not discharged on July 16, 1937, but worked until August 26, 1937.[8]

■ The Board found that respondent's purpose in shutting down its plant and discharging employees on July 16, 1937, was to compel the discharged employees to become members of Local 21074 (then about to be formed)[9] and to compel those who were members of Local 356 to renounce such membership; that on July 16, 1937, and at all times thereafter, respondent refused to reinstate the discharged employees unless and until they became members of Local 21074 and renounced their membership in Local 356; that respondent procured the formation of Local 21074, urged its employees to join Local 21074 and not to join Local 356, recognized Local 21074 as the representative of its employees for the purposes of collective bargaining, made closed shop agreements with Local 21074[10] on August 27, 1937, and October 23, 1937, and gave effect thereto; that Local 86 was chartered on October 28, 1939; that the members, officers, books, records and property of Local 21074 thereupon became the members, officers, books, records and property of Local 86; that Local 86 thus became the successor of Local 21074; and that respondent recognized Local 86 as the representative of its employees for the purposes of collective bargaining, made a closed shop agreement with Local 86[11] on April 10, 1940, and gave effect thereto. These findings are supported by substantial evidence and hence are conclusive.

■ The Board correctly concluded that, in refusing to bargain collectively with Local 356 as the representative of its employees, shutting down its plant and discharging employees for the purpose of compelling them to become members of Local 21074 and to renounce their membership in Local 356, refusing to reinstate discharged employees unless and until they became members of Local 21074, procuring the formation of Local 21074, urging employees to join Local 21074 and not to join Local 356, recognizing Local 21074 and Local 86 as the representatives of its employees, and making and giving effect to the closed shop agreements of August 27, 1937, October 23, 1937, and April 10, 1940, respondent interfered with, restrained and coerced employees in the exercise of rights guaranteed in § 7 of the Act, 29 U.S.C.A. § 157,[12] and thus engaged in an unfair labor practice listed in § 8(1) of the Act, 29 U.S.C.A. § 158(1);[13] that, in shutting down its plant and discharging employees

---

ployees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment: Provided, That any individual employee or a group of employees shall have the right at any time to present grievances to their employer."

[7] See § 10(e) of the Act, 29 U.S.C.A. § 160(e).

[8] Some work had to be, and was, carried on while the plant was shut down.

[9] Local 21074 was chartered on August 9, 1937.

[10] Agreements requiring as a condition of employment membership in Local 21074.

[11] An agreement requiring as a condition of employment membership in Local 86.

[12] Section 7 of the Act, 29 U.S.C.A. § 157, provides: "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities, for the purpose of collective bargaining or other mutual aid or protection."

[13] Section 8(1) of the Act, 29 U.S.C.A. § 158(1), declares it to be an unfair labor practice for an employer: "To interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7 of this Act [29 U.S.C.A. § 157]."

for the purpose of compelling them to become members of Local 21074 and to renounce their membership in Local 356, refusing to reinstate discharged employees unless and until they become members of Local 21074, and making and giving effect to the closed shop agreements of August 27, 1937, October 23, 1937, and April 10, 1940, respondent discriminated in regard to hire and tenure of employment of its employees, thereby encouraged membership in Local 21074 and Local 86 and discouraged membership in Local 356, and thus engaged in an unfair labor practice listed in § 8(3) of the Act, 29 U.S.C.A. § 158(3) ;[14] and that, in refusing to bargain collectively with Local 356 as the representative of its employees, respondent engaged in an unfair labor practice listed in § 8(5) of the Act, 29 U.S.C.A. § 158(5).[15]

 The Board found that the unfair labor practices so engaged in by respondent tended to lead to labor disputes burdening and obstructing commerce[16] and the free flow of commerce and therefore were unfair labor practices affecting commerce.[17] This finding is supported by substantial evidence and hence is conclusive.

The order requires respondent to cease and desist from its unfair labor practices and to take certain affirmative action.

 Respondent says that it "withdrew" from commerce on or before March 1, 1940, and was not thereafter engaged in commerce. It therefore contends that it was not subject to the Board's jurisdiction after March 1, 1940, and that therefore the Board had no jurisdiction to issue the complaint on May 11, 1940, or to issue the order on April 18, 1942. These contentions assume that, to be subject to the Board's jurisdiction, an employer must be engaged in commerce. The assumption is incorrect.[18] Every employer who has engaged in or is engaging in any unfair labor practice affecting commerce is subject to the Board's jurisdiction,[19] regardless of whether or not such employer is engaged in commerce.[20] In this case, it was charged and found, and the finding is supported by substantial evidence, that respondent engaged in unfair labor practices affecting commerce on July 16, 1937, and continuously thereafter. Therefore the Board had jurisdiction to issue the complaint on May 11, 1940, and to issue the order on April 18, 1942, and had such jurisdiction despite the fact, if it be a fact, that respondent was not engaged in commerce after March 1, 1940.

In support of its contention that the Board had no jurisdiction to issue the order on April 18, 1942, respondent cites Chamber of Commerce v. Federal Trade Commission, 8 Cir., 13 F.2d 673, and United Corporation v. Federal Trade Commission, 4 Cir., 110 F.2d 473. These cases did not arise under the National Labor Relations Act, but arose under the Federal Trade Commission Act, [21] and hence are not in point.

 Respondent says "There is neither evidence nor finding that respondent's

---

[14] Section 8(3) of the Act, 29 U.S.C.A. § 158(3), declares it to be an unfair labor practice for an employer: "By discrimination in regard to hire or tenure of employment * * * to encourage or discourage membership in any labor organization: Provided, That nothing in sections 1–16 of this Act [29 U.S.C.A. §§ 151–166] or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization (not established, maintained, or assisted by any action defined in sections 1–16 of this Act [29 U.S.C.A. §§ 151–166] as an unfair labor practice) to require as a condition of employment membership therein, if such labor organization is the representative of the employees as provided in section 9(a) of this Act [29 U.S.C.A. § 159 (a)], in the appropriate collective bargaining unit covered by such agreement when made."

[15] Section 8(5) of the Act, 29 U.S.C.A. § 158(5), declares it to be an unfair labor practice for an employer: "To refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 9(a) of this Act [29 U.S.C.A. § 159(a)]."

[16] As used in this opinion, the term "commerce" has the meaning given in § 2(6) of the Act, 29 U.S.C.A. § 152(6).

[17] As used in this opinion, the term "affecting commerce" has the meaning given in § 2(7) of the Act, 29 U.S.C.A. § 152(7).

[18] National Labor Relations Board v. Fainblatt, 306 U.S. 601, 59 S.Ct. 668, 83 L.Ed. 1014.

[19] See § 10(a), (b) and (c) of the Act, 29 U.S.C.A. § 160(a), (b) and (c).

[20] National Labor Relations Board v. Fainblatt, supra.

[21] 15 U.S.C.A. §§ 41–46, 47–58.

activities affect commerce." Respondent is mistaken. The evidence shows that in 1937, 1938 and 1939 and during the period from January 1, 1940, to June 20, 1940, materials, equipment and supplies produced outside of and transported into the State of California were purchased by respondent for use at its plant at Cowell, California, and were there delivered to and received by respondent. Of the materials, equipment and supplies so produced, transported and purchased, the evidence shows that respondent received at its Cowell plant 5,206,618 pounds in 1937, 5,997,832 pounds in 1938, 6,181,233 pounds in 1939 and $21,214.13 worth in the period from January 1, 1940, to June 20, 1940.[22] The transportation of such materials, equipment and supplies into California from points outside the State was commerce.[23] The Board found, and the finding is supported by substantial evidence, that respondent's unfair labor practices tended to lead to labor disputes burdening and obstructing that commerce and the free flow thereof and therefore were unfair labor practices affecting commerce.[24]

The evidence shows that some of the $21,214.13 worth of materials, equipment and supplies delivered to and received by respondent in the period from January 1, 1940, to June 20, 1940, were purchased by respondent in California, from California dealers, having been transported into California prior to such purchase. That, however, is immaterial; for the transportation was commerce, regardless of whether it preceded or followed respondent's acquisition of title to the transported articles.[25] Nor is it important that the volume of such commerce was relatively small.[26]

Respondent and Local 86 say that the finding that on July 16, 1937, a majority of respondent's employees were members of Local 356 and had designated it as their representative for the purposes of collective bargaining is not supported by evidence. We hold that it is. There is evidence that on July 16, 1937, respondent had, in all, 196 employees, of whom at least 129 were members of Local 356 and had designated it as their representative for the purposes of collective bargaining. Having been so designated, Local 356 was, for the purposes mentioned, the exclusive representative of respondent's employees on July 16, 1937.[27]

Respondent and Local 86 say that the "majority status" of Local 356, if such existed on July 16, 1937, was "lost" by a shift in membership occurring after July 16, 1937, and that thereupon Local 356 ceased to be, if it ever was, the representative of respondent's employees. The Board found, and the finding is supported by substantial evidence, that if any such shift in membership occurred, it resulted from, and was attributable to, respondent's unfair labor practices. The Board correctly concluded that these unfair labor practices could not "operate to change the bargaining representative previously selected by the untrammeled will of the majority,"[28] and that therefore, regardless of any shift in membership, Local 356 was the exclusive representative of respondent's employees at all times after—as well as on—July 16, 1937.

Respondent and Local 86 say that respondent, in making and giving effect to the closed shop agreements of August 27, 1937, October 23, 1937, and April 10, 1940,

---

[22] The hearing was commenced on June 8, 1940, and was concluded on August 6, 1940. Shipments of materials, equipment and supplies into California and deliveries thereof to respondent after June 20, 1940, are not shown. There being, however, no claim or suggestion that shipments and deliveries ceased on that date, we may and do assume that they continued.

[23] See § 2(6) of the Act, 29 U.S.C.A. § 152(6).

[24] See § 2(7) of the Act, 29 U.S.C.A. § 152(7).

[25] National Labor Relations Board v. Fainblatt, supra; National Labor Relations Board v. Sunshine Mining Co., 9 Cir., 110 F.2d 780, 784.

[26] National Labor Relations Board v. Fainblatt, supra; National Labor Relations Board v. Register Pub. Co., 9 Cir., 141 F.2d 156, 162.

[27] See footnote 6.

[28] National Labor Relations Board v. Bradford Dyeing Ass'n., 310 U.S. 318, 339, 60 S.Ct. 918, 84 L.Ed. 1226; International Ass'n. of Machinists v. National Labor Relations Board, 311 U.S. 72, 81, 61 S.Ct. 83, 85 L.Ed. 50; National Labor Relations Board v. P. Lorillard Co., 314 U.S. 512, 62 S.Ct. 397, 86 L.Ed. 380; Medo Photo Supply Corporation v. National Labor Relations Board, 321 U.S. 678, 687, 64 S.Ct. 830, 88 L.Ed. 1007; Franks Bros. Co. v. National Labor Relations Board, 321 U.S. 702, 704–706, 64 S.Ct. 817, 88 L.Ed. 1020.

did not engage in an unfair labor practice. We hold that it did; for, in making and giving effect to these agreements, respondent discriminated in regard to hire and tenure of employment of its employees, thereby encouraged membership in Local 21074 and Local 86 and discouraged membership in Local 356, and thus engaged in an unfair labor practice listed in § 8(3) of the Act, 29 U.S.C.A. § 158(3).[29]

The proviso in § 8(3) of the Act, 29 U.S.C.A. § 158(3), permits an employer to make a closed shop agreement with a labor organization which is the representative of its employees and is not established, maintained or assisted by any unfair labor practice, but the proviso is inapplicable here; for the closed shop agreements of August 27, 1937, October 23, 1937, and April 10, 1940, were made with labor organizations (Local 21074 and Local 86) neither of which was the representative of respondent's employees, and one of which (Local 21074) was established, maintained and assisted by respondent's unfair labor practices.

Respondent and Local 86 say that Local 21074 was the representative of respondent's employees on August 27, 1937, and October 23, 1937, and that Local 86 was their representative on April 10, 1940. Since, however, Local 356 was their exclusive representative on July 16, 1937, and at all times thereafter, neither Local 21074 nor Local 86 was or could have been their representative on any of the dates mentioned.

■ The shutdown of respondent's plant, commencing on July 16, 1937, continued until October 1, 1937. Respondent says that this was a seasonal shutdown, necessitated by business conditions, and was not unlawful. The Board found that, due to the seasonal character of respondent's business, it was necessary at times to shut down its plant; that, in the normal course of business, such a shut down would have occurred in the summer of 1937, but would not have occurred before July 31, 1937, and would not have continued for more than two months; and that, in shutting down its plant on July 16, 1937, respondent acted, not for business reasons, but for the purpose of compelling employees to become members of Local 21074 and to re-

nounce their membership in Local 356—an obviously unlawful purpose. These findings are supported by substantial evidence and hence are conclusive.

■ Respondent says that it discharged Gonzales because his work was unsatisfactory, and that such discharge was not unlawful. The Board found that Gonzales' work was unsatisfactory to respondent; that respondent therefore decided, in June, 1937, that Gonzales should be discharged at the time of the next seasonal shutdown, and gave its foreman, H. A. Stenger, orders to that effect; that, in the normal course of business, such seasonal shutdown and the consequent discharge of Gonzales would not have occurred before July 31, 1937; and that the discharge of Gonzales on July 16, 1937, was not because his work was unsatisfactory, but was part of respondent's unlawful attempt to compel employees to become members of Local 21074 and to renounce their membership in Local 356. These findings are supported by substantial evidence and hence are conclusive.

■ Respondent says that Burt, Carter, Manos and Marseu were not its employees, but were employees of another corporation—Bay Point & Clayton Railroad.[30] In finding, as it did, that respondent refused to reinstate the 171 employees (including Burt, Carter, Manos and Marseu) listed in Appendix A attached to the order unless and until they became members of Local 21074, the Board, by necessary implication, found that Burt, Carter, Manos and Marseu were employees of respondent. This finding is supported by substantial evidence and hence is conclusive.

Respondent points out that Burt, Carter, Manos and Marseu were not discharged on July 16, 1937. That, however, is unimportant; for respondent discriminated in regard to hire and tenure of employment of its employees, not only on July 16, 1937, when it shut down its plant and discharged the employees (other than Burt, Carter, Manos and Marseu) listed in Appendix A, but also on, and at all times after, August 27, 1937, when it made its first closed shop agreement with Local 21074. Although not victims of the original discrimination, Burt, Carter, Manos and Marseu were victims of that which began on August 27, 1937.

---

[29] See footnote 14.

[30] Respondent and Bay Point & Clayton Railroad were subsidiaries of a third corporation—Henry Cowell Lime & Cement Company. The three corporations functioned together as one business enterprise. Their relations were described in our former opinion (108 F.2d 198).

Respondent says that some of the employees listed in Appendix A were not members of Local 356 on July 16, 1937. That is unimportant, if true; for the Board found, and the finding is supported by substantial evidence, that respondent's purpose in shutting down its plant and discharging employees on July 16, 1937, was not only to compel the discharged employees to renounce their membership in Local 356, but also to compel them to become members of Local 21074. Respondent's action therefore constituted an unlawful discrimination, despite the fact, if it be a fact, that some of the discharged employees were not members of Local 356 on July 16, 1937. All employees discharged by respondent on that date—whether members of Local 356 or not—were victims of that discrimination.

The order contains thirteen paragraphs. These are numbered 1(a), 1(b), 1(c), 1(d), 1(e), 1(f), 2(a), 2(b), 2(c), 2(d), 2(e), 2 (f) and 2(g).

Paragraphs 1(a), 1(b), 1(c), 1(d) and 1 (e) require respondent to cease and desist from the unfair labor practices found to have been engaged in by respondent. These paragraphs will be enforced.

Paragraph 1(f) requires respondent to cease and desist from "In any other manner interfering with, restraining, or coercing its employees in the exercise of the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities for the purposes of collective bargaining or other mutual aid and protection, as guaranteed in section 7 of the Act [29 U.S.C.A. § 157]." This, in effect, is a blanket order restraining respondent from violating the statute [31] in any manner. We think such a blanket order unwarranted [32] and decline to enforce it.

Paragraph 2(a) requires respondent to "Offer the employees listed in Appendix A who have not been fully reinstated, immediate and full reinstatement to their former or substantially equivalent positions without prejudice to their seniority and other rights and privileges in the manner set forth in [section V of the Board's findings],[33] placing those employees for whom employment is not immediately available upon a preferential list in the manner set forth in said section and thereafter in said manner offering them employment as it becomes available."

Paragraph 2(b) awards back pay to the employees listed in Appendix A. Specifically, it requires respondent to "Make whole the employees listed in Appendix A for any loss of pay they may have suffered by reason of the respondent's discrimination against them by payment to each of them of a sum of money equal to the amount which he normally would have earned as wages from July 16, 1937, (1) to the date of reinstatement in the case of those employees who have been fully reinstated, and (2) to the date of the offer of reinstatement or placement upon the preferential list in the case of those employees who have not been fully reinstated, less his net earnings during said period." [34]

---

[31] Sections 7 and 8(1) of the Act, 29 U. S.C.A. §§ 157 and 158(1).

[32] National Labor Relations Board v. Express Pub. Co., 312 U.S. 426, 432–438, 61 S.Ct. 693, 85 L.Ed. 930; National Labor Relations Board v. Walt Disney Productions, 9 Cir., 146 F.2d 44, 50.

[33] Section V provides: "Such reinstatement shall be effectuated in the following manner: All persons hired after July 16, 1937, shall, if necessary to provide employment for those to be offered reinstatement, be dismissed. If, thereupon, by reason of a reduction in force, there is not sufficient employment immediately available for the remaining employees, including those to be offered reinstatement, all available positions shall be distributed among such remaining employees in accordance with the respondent's usual method of reducing its force, without discrimination against any employee because of his union affiliation or activities, and following a system of seniority to such extent as has heretofore been applied in the conduct of the respondent's business. Those employees remaining after such distribution, for whom no employment is immediately available, shall be placed upon a preferential list prepared in accordance with the principles set forth in the previous sentence, and shall thereafter, in accordance with such list, be offered employment in their former or substantially equivalent positions as such employment becomes available and before other persons are hired for such work."

[34] Appended to and constituting part of paragraph 2(b), is a footnote reading as follows: "It shall not be deemed that employees normally laid off during times of seasonal shutdowns would have earned wages from August 1, 1937, to October 1, 1937, nor shall net earnings, if any, dur-

Paragraph 2(c) awards back pay to Gonzales for the period from July 16, 1937, to July 31, 1937.

Respondent objects to paragraphs 2(a), 2(b) and 2(c). One objection is that some of the employees mentioned in these paragraphs participated in a strike called by Local 356 on July 17, 1937—after respondent had discriminatorily discharged them. This is not a valid objection.[35]

Another objection is that some of the employees mentioned in these paragraphs—employees whom respondent discriminatorily discharged—have not applied for reinstatement. This is not a valid objection.[36]

Another objection is that some of the employees mentioned in these paragraphs have been reinstated. This is not a valid objection; for obviously the reinstatement of some does not excuse the failure or refusal to reinstate others.

Another objection is that some of the employees mentioned in these paragraphs have been offered and have refused reinstatement. The Board found, and the finding is supported by substantial evidence, that such offers of reinstatement (so-called) were conditioned upon such employees' becoming members of Local 21074 or its successor, Local 86. The Board correctly concluded that such offers were "equivalent to absolute refusal to reinstate."[37]

Another objection is that the former positions of some of the employees mentioned in these paragraphs have been abolished. This is not a valid objection. Employees whose former positions have been abolished can be offered "substantially equivalent positions," as provided in paragraph 2(a).[38]

Another objection is that paragraphs 2(a), 2(b) and 2(c) were included in the order in violation of the following stipulation entered into by the parties—the Board, respondent and Local 86—on June 25, 1940:

"It is stipulated that the rights of no party to this proceeding shall be prejudiced by the failure of any such party to present, in connection with any issue to which the same is relevant, evidence as to earnings, the procurement of regular and substantially equivalent employment, or the termination of the status as employee of respondent, as the terms 'regular and substantially equivalent employment' and 'employe' are defined in the National Labor Relations Act; it being further stipulated that any party shall have the right to present evidence on any such matters to the Board in supplemental hearings, or by stipulation if the parties are able to stipulate, if and when an affirmative order or direction is made by the Board on any issue to which such evidence or any thereof, is relevant."

Respondent contends that the Board could not, consistently with the stipulation, order reinstatement of, or award back pay to, any employee until after the issuance of a cease-and-desist order and after a subsequent "supplemental hearing." There was no such hearing. Hence the objection that paragraphs 2(a), 2(b) and 2(c) violate the stipulation. This objection was not urged before the Board or any member, agent or agency thereof[39] and hence cannot be considered by us.[40]

Another objection is that the Board made no "adequate findings of fact

---

ing such period be deducted from the sums otherwise due the employees under this order."

[35] National Labor Relations Board v. Sunshine Mining Co., 9 Cir., 110 F.2d 780, 792.

[36] National Labor Relations Board v. Sunshine Mining Co., 9 Cir., 110 F.2d 780, 792; Idaho Potato Growers v. National Labor Relations Board, 9 Cir., 144 F.2d 295, 305.

[37] National Labor Relations Board v. National Motor Bearing Co., 9 Cir., 105 F.2d 652, 658.

[38] See, also, footnote 33.

[39] Respondent never presented or offered to present evidence as to any of the matters mentioned in the stipulation, nor did it at any time seek or request a "supplemental hearing." The objection that paragraphs 2(a), 2(b) and 2(c) violate the stipulation was first made in respondent's brief filed in this court.

[40] See § 10(e) of the Act, 29 U.S.C.A. § 160(e); Marshall Field & Co. v. National Labor Relations Board, 318 U.S. 253, 256, 63 S.Ct. 585, 87 L.Ed. 744; National Labor Relations Board v. National Motor Bearing Co., 9 Cir., 105 F.2d 652, 662; National Labor Relations Board v. Sunshine Mining Co., 9 Cir., 110 F.2d 780, 790; National Labor Relations Board v. Grower-Shipper Vegetable Assn., 9 Cir., 122 F.2d 368, 378; National Labor Relations Board v. J. G. Boswell Co., 9 Cir., 136 F.2d 585, 597.

showing that effectuation of policies of Act requires that in this case employer offer reinstatement to former employees who have secured other regular and substantially equivalent employment." [41] The Board stated its conclusion that the affirmative action required by the order—including that required by paragraphs 2(a), 2(b) and 2(c)—would effectuate the policies of the Act, and it found facts which, in our opinion, warrant the conclusion.

■ Another objection is that paragraph 2(b) requires respondent to make whole the employees listed in Appendix A for losses wilfully incurred, that is to say, for the loss of wages which such employees could have earned, but have, without excuse, failed to earn. We do not so construe it. We do not think the Board meant to disregard the admonition that, "Since only actual losses should be made good, it seems fair that deductions should be made not only for actual earnings by the worker but also for losses which he wilfully incurred." [42] We think that, as used in paragraph 2(b), the term "loss" means loss actually incurred, and the term "net earnings" includes those which the employee could have earned, but has, without excuse, failed to earn. This will be made clear by a proviso to be added to paragraph 2(b), [43] as indicated below.

■ Respondent complains of delays in this proceeding and suggests that, if paragraph 2(b) is not set aside, we should, because of these delays, modify it "so as to require back pay only for the period subsequent to May 8, 1940," the date on which Local 356 filed its second amended charge. There have been delays, [44] unfortunately, but we do not think they warrant the suggested modification. [45]

Other objections to paragraphs 2(a), 2(b) and 2(c), [46] are sufficiently answered in what is said above. These paragraphs will be enforced.

Paragraph 2(d) requires respondent to withhold and withdraw recognition from Local 21074 and Local 86 as representatives of respondent's employees until they or either of them shall have been certified as such by the Board. Paragraph 2(e) requires respondent, upon request, to bargain collectively with Local 356 as such representative. Respondent and Local 86 object to these paragraphs. Their objections [47] are sufficiently answered in what is said above. These paragraphs will be enforced.

Paragraph 2(f) requires respondent to post the usual notices. Paragraph 2(g) requires the usual notification to the Board's regional director. Except as indicated below, these paragraphs will be enforced.

The order will be modified by striking therefrom paragraph 1(f) thereof; by adding to paragraph 2(b) a proviso to the effect that, as used in that paragraph, the term "loss" means loss actually incurred, and the term "net earnings" includes those which the employee could have earned, but has, without excuse, failed to earn; by striking from paragraph 2(f) all references to paragraph 1(f); and by amending paragraph 2(g) so that, instead of requiring notice to be given to the Board's regional director within 10 days from the date of the order, it will require such notice to be given within 10 days from the date on which our decree becomes final. [48]

As thus modified, the order will be enforced.

[41] Cf. Phelps Dodge Corporation v. National Labor Relations Board, 313 U.S. 177, 189–197, 61 S.Ct. 845, 85 L.Ed. 1271, 133 A.L.R. 1217.

[42] Phelps Dodge Corporation v. National Labor Relations Board, 313 U.S. 177, 198, 61 S.Ct. 845, 85 L.Ed. 1271, 133 A.L.R. 1217.

[43] Cf. J. I. Case Co. v. National Labor Relations Board, 321 U.S. 332, 341, 64 S.Ct. 576, 88 L.Ed. 762.

[44] We note, in this connection, that the record here fills eight volumes (3,663 pages). Cf. National Labor Relations Board v. Grower-Shipper Vegetable Assn., 9 Cir., 122 F.2d 368, 379.

[45] Cf. National Labor Relations Board v. Electric Vacuum Cleaner Co., 315 U.S. 685, 698, 62 S.Ct. 846, 86 L.Ed. 1120; National Labor Relations Board v. Grower-Shipper Vegetable Assn., supra; National Labor Relations Board v. J. G. Boswell Co., supra.

[46] That the employees mentioned in these paragraphs were not discriminatorily discharged; that one (Gonzales) was discharged for cause; that some were not members of Local 356; and that four (Burt, Carter, Manos and Marseu) were not employees of respondent and were not discharged on July 16, 1937.

[47] That Local 86 is the representative of respondent's employees, and that Local 356 is not their representative.

[48] Cf. National Labor Relations Board v. Register Pub. Co., 9 Cir., 141 F.2d 156, 163.