**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**PLANT CITY STEEL CORPORATION, Respondent.**

No. 20250.

United States Court of Appeals Fifth Circuit.

April 23, 1964.

Rehearing Denied June 10, 1964.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Elliott Moore, Atty., Stuart Rothman, Gen. Counsel, N. L. R. B., Washington, D. C., for petitioner.

Erle Phillips, Robert J. Berghel, Atlanta, Ga., Fisher & Phillips, Atlanta, Ga., for respondent.

Before TUTTLE, Chief Judge, and BROWN and BELL, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

This is a petition for enforcement of the Board's order which finding the Employer guilty of violating §§ 8(a) (1) and 8(a) (3), contained the usual cease and desist order together with reinstatement and back pay for the one dischargee. We enforce.

■■ The § 8(a) (1) charge was sustained on a number of grounds. Plant Engineer Rahrer, high in the company hierarchy and therefore a spokesman for management, though perhaps not a too careful one, undertook to address a meeting of the employees called as a safety

■

meeting, but at which, all agree, safety was never even mentioned. If Rahrer stuck to his script, there was no basis for the finding of the intimidating threats. But the 470-word script was a short one capable of being delivered in a few minutes, whereas he talked, so credible witnesses testified, for nearly 20 minutes. If what they said he said he really said, the words themselves were quite sufficient to convey both antiunion views and an illegal purpose to retaliate, N. L. R. B. v. Ferguson, 5 Cir., 1958, 257 F.2d 88, 90. As we have said many times, that credibility choice was for the Board.

> "The only question is whether the words were spoken. It was for the Board to draw that conclusion from conflicting testimony. Once established as a verbal act, the [coercive] purpose was plain. N.L.R.B. v. Ferguson, 5 Cir., 1958, 257 F.2d 88, 90." Hendrix Mfg. Co. v. N. L. R. B., 5 Cir., 1963, 321 F.2d 100, 105.

■ It was also within the Board's prerogative to conclude that the General Manager, generally successful—so the Board held—in walking the tight rope between permissible economic predictions, N. L. R. B. v. Transport Clearings, Inc., 5 Cir., 1962, 311 F.2d 519, and illegal threats to shut down were the Union to come in, N. L. R. B. v. West Point Mfg. Co., 5 Cir., 1957, 245 F.2d 783, 785; N. L. R. B. v. Dan River Mills, Inc., 5 Cir., 1960, 274 F.2d 381, 384, fell off at one step. This occurred when he attempted in separate meetings with groups of employees to stress the economic independence of the principal stockholder of this closely held enterprise. He argued that the owner-stockholder was free from interference from other stockholders and had the ability to close the plant without suffering economic want. In the setting of this case, the Board was permitted to infer that this carried the overtone of a threat to the economic security of the employees. Of course an employer is not justified in "making the anticipated events the subjects of threats * * * to force abandonment of the Union by the employees." N. L. R. B. v. Parma

Water Lifter Co., 9 Cir., 1954, 211 F.2d 258, 262.

■ As to the interrogations, the Board's order does not infringe on the rights of an employer to make proper inquiry. N. L. R. B. v. Dan River Mills, 5 Cir., 1960, 274 F.2d 381 at 388; N. L. R. B. v. Lindsay Newspapers, Inc., 5 Cir., 1963, 315 F.2d 709, 711; Hendrix Mfg. Co., Inc. v. N. L. R. B., 5 Cir., 1963, 321 F.2d 100, 105; N. L. R. B. v. R. C. Can Co., 5 Cir., 1964, 328 F.2d 974 [No. 20609, 1964]; cf. N. L. R. B. v. Minute Maid Corp., 5 Cir., 1960, 283 F.2d 705, 710.

■ Likewise, the Board's condemnation of Rule 14 [1] was justified. Its sweeping absolute terms were implemented by action which here took the form of removing union leaflets from the windshields and seats of employees' cars parked on the company parking lot. In other words, the Employer applied the Rule as broadly as its terms would allow. The assumption seems to be that the leaflets were put on or in the employees' cars by non-employee outsiders and strict enforcement was therefore necessary to carry out a no-trespassing policy. There was, however, no proof that distribution was by non-employees. And the Company's actions in removing the literature and in the repeated strong emphasis to various persons about distributing union literature justified the Board's conclusion that the Employer had not made the requisite proof of the "special circumstances [which] make the rule necessary in order to maintain production or discipline." Republic Aviation Corp. v. N. L. R. B., 1945, 324 U.S. 793, 803 n. 10, 804–05, 65 S.Ct. 982, 89 L.Ed. 1372; N. L. R. B. v. Walton Mfg. Co., 5 Cir., 1961, 289 F.2d 177, 180; N. L. R. B. v. Texas Aluminum Co., 5 Cir., 1962, 300 F. 2d 315, 316; N. L. R. B. v. Great Atlantic & Pacific Tea Co., 5 Cir., 1960, 277 F.2d 759, 761–64.

■ The § 8(a) (3) finding and order of reinstatement for the discharge of employee Booth presents nothing but a run-of-the-mill factual controversy, the resolution of which is for the Board. Booth had been a satisfactory employee for 3½ years. He had been selected to operate the new hydraulic brake at the time it was purchased, and the Employer recognizes that no shortcoming as to his work was reflected in its records or in his discharge slip. On the other hand, Booth was particularly active in the Union's campaign as an active member of the organizing committee who passed out a number of cards to other employees. The Board was not required to disassociate this incident from all others occurring in the antiunion drive, including the speech of plant engineer Rahrer, the interrogations and implied threats of the General Manager and Rahrer's statements made on several occasions that the Employer knew the identity of several of the Union instigators, and that they had better watch their step. A supervisor, having the status under the Act as a spokesman for management, told Booth after his discharge that he "should have been more careful with his Union cards." Other circumstances warrant the inference that it was Union activity, not some unrelated cause, which gave rise to the discharge. For example, the separation slip stated "lack of work; violation of company policy." The explanation for the reason "lack of work" is both confused and confusing and so lacking in any basis so far as this particular employee is concerned as to amount to an unsupported reason. Conceding that the Employer was about to, and perhaps did, make a seasonal layoff, the various department or section heads were requested to indicate the persons to be laid off. Booth was not one of them.

■ The violation of company policy was unreported absenteeism on the preceding Monday. The absence itself was apparently not serious as he had an "average" record of absences and had never been reprimanded or warned.

1. Rule 14 stated: "Employees must not engage in the distribution of any literature, unauthorized soliciting or selling of any kind during working hours or on company premises."

The usual sanction was a warning for the first offense followed by a two-day disciplinary layoff for a second offense. On his return to the plant, Booth told his foreman Robertson that his son had been in an accident Saturday night and he, Booth, had been "quite shook up over it and didn't feel well enough on Monday morning" to come in. Robertson reported this to the plant superintendent. Booth later repeated the substance of this to the plant superintendent, but added that he, Booth, had been so upset that his doctor wanted him hospitalized, but he preferred to stay at home and rest. The plant superintendent then checked at the doctor's office and obtained from a secretary the information that there was no record of the doctor having treated the elder Booth. He did not check further by talking with the doctor. He also called the hospital which confirmed that Booth's son had been treated, but no record was made as to treatment for Booth.

The plant superintendent—over the objections of Robertson, Booth's foreman—adhered to his decision to discharge Booth. Robertson and another foreman expressed disagreement over the discharge and one stated that it was "because of union activities he was laid off." Booth asked the plant superintendent what violation of "company policy" he had committed. The Board credited witnesses who swore they heard the plant superintendent reply, "I only work here like you do. You will have to ask somebody higher than me." This refusal to tell Booth the reason for his discharge was a circumstance which might "alone * * * be enough to support an inference that the [discharge] was discriminatory." N. L. R. B. v. Griggs Equipment, Inc., 5 Cir., 1962, 307 F.2d 275, 278; N. L. R. B. v. Dell, 5 Cir., 1960, 283 F.2d 733, 736 n. 6, 737; N. L. R. B. v. S. S. Coach-man & Sons, 5 Cir., 1953, 203 F.2d 109, 110–11. As we observe earlier, this refusal or inability to state the real cause of the discharge was followed then by another supervisor's statement to Booth that Booth "should have been more careful with his union cards."

This aspect of the case did not turn, as contended by the Employer, on whether Booth was telling the truth to the plant superintendent or to his foreman, or both, concerning the incident of his son's injury and his consequential illness. If the Employer was convinced that Booth was not telling the truth in the excuse for his absence, and he was discharged for that reason, it would not matter whether the charges were or were not well founded.[2] The significant question is whether Booth's statement in connection with his absence provided the "real" reason for his discharge. In view of all of the other circumstances, the Board was not compelled to accept the plant superintendent's statements at face value.

The case was one in which the Examiner showed a discriminating appraisal of the evidence. He dismissed the charges as to several alleged discriminatees, rejected charges that the Employer had engaged in surveillance and made other findings significantly favorable to the Employer. On these actions of the trier of fact, the Employer attempts to build the argument that the adverse findings cannot stand because the evidence as to them was no more favorable than as to the claims rejected. Fact findings cannot, however, be reduced to such a mechanical system. The case turned on credibility choices. It is the Board that makes them and having made them on sufficient evidence, the matter ends there.

Order enforced.

---

2. Cf. Rubin Bros. Footwear v. N. L. R. B., 5 Cir., 1953, 203 F.2d 486; N. L. R. B. v. Burnup & Sims, Inc., 5 Cir., 1963, 322 F.2d 57, cert. granted, 375 U.S. 983, 84 S.Ct. 518, 11 L.Ed.2d 472; N. L. R. B. v. R. C. Can Co., 5 Cir., 1964, 328 F.2d 974 [No. 20609, 1964].