### RIDGELY MANUFACTURING COMPANY, Petitioner,

v.

### NATIONAL LABOR RELATIONS BOARD, Respondent.

### Nos. 73–2230, 73–2251.

United States Court of Appeals, District of Columbia Circuit.

March 21, 1975.

---

**186**

Norman Geiger, Brooklyn, N. Y., was on the brief for petitioner.

Peter G. Nash, Gen. Counsel, John S. Irving, Deputy Gen. Counsel, Patrick Hardin, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., and Jay E. Shanklin and Morton Namrow, Attys., N. L. R. B., were on the brief for respondent.

Before RICHARD T. RIVES,* Senior Circuit Judge for the Fifth Circuit, and WRIGHT and McGOWAN, Circuit Judges.

---

* Sitting by designation pursuant to Title 28 U.S.Code § 294(d).

1. The recent histories of the Company and of its affiliate, the Hickman Garment Company, are riddled with labor violations. *See* Hickman Garment Company, 172 NLRB 1168 (1968), enforced, 408 F.2d 379 (6th Cir.), cert. denied, 396 U.S. 838, 90 S.Ct. 99, 24 L.Ed.2d 89 (1969) (threatening and discharging or re-

**PER CURIAM:**

At issue in these consolidated direct review proceedings are two orders of the National Labor Relations Board. The first requires the Ridgely Construction Company, of Ridgely, Tennessee, to cease and desist from certain unfair labor practices, and to reinstate with back pay six employees found to have been illegally discharged for union activities. *See* 29 U.S.C. § 158(a)(1) and (3) (1970). The second order is similar, requiring the reinstatement of a seventh employee. The Company seeks review of the orders; the Board has cross-applied for enforcement. For the reasons appearing hereinafter, we affirm the Board and grant enforcement.

The Company's objections are quite narrow. It apparently does not challenge the Board's findings of unfair labor practices except with respect to the discharge of the six employees named in the first order. Its only other contention is that, subsequent to the discharges, it extended to all seven employees valid offers of reinstatement which tolled the period for which back pay is due.

There is no issue as to the applicable law. A discharge is unlawful if motivated even in part by anti-union animus; the presence of such a motivation is a factual matter which the Board may resolve upon circumstantial evidence on the record as a whole. *See, e. g.,* Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); Singer Co. v. NLRB, 429 F.2d 172, 179 (8th Cir. 1970); Food Store Employees Local 347 v. NLRB, 135 U.S.App.D.C. 341, 418 F.2d 1177, 1181 (1969). The evidence before the Board substantially supports the result reached by it.[1]

fusing employment to employees because of union activity); Ridgely Manufacturing Company, Case No. 26 CA–3143, Trial Examiner (now Administrative Law Judge) Decision, November 26, 1968; Hickman Garment Company, 184 NLRB 864 (1970) (discharge and threats in order to defeat union during an election campaign); Hickman Garment Company, 184 NLRB 888 (1970) (threatening and

The union election which allegedly occasioned the discharges in question also provoked a number of other labor violations by the Company around the same time. During the month prior to the election, a Company representative made several improperly coercive speeches to employees regarding union representation. The Company also withheld a customary semi-annual wage increase for the stated reason that union activity made it impossible.

Against this background the Board received evidence of the following facts with respect to individual discharges:

(a) Doris and Shawanne Cook, employees of the Company with good work records, were married to two brothers, Leroy and Billy Joe Cook. The brothers were also employed by the Company. Their support for the union was active and well-known. Leroy was himself expressly threatened with firing for his union activities. A Company representative stated to a fellow employee on another occasion that both brothers, along with their wives, would be fired because of their work for the union. Though the men were not discharged, their wives lost their jobs during the week before the union election.

(b) Betty Cook, the mother of Leroy and Billy Joe, also had a good work record. On the day after the discharge of one of her daughters-in-law she complained of it to the plant manager. He denied that it was because of her son's union activities. She informed him that she also was for the union. The next day she was discharged.

(c) Ida Lou Williams, and her daughter, Mary Terry, were also discharged during the week preceding the union election. Some time earlier, they had been in conversation during a work break when the plant manager had interrupted and asked them to return to work. Williams informed the manager that they had been discussing the union and that both favored it. The manager left without responding. Later that day Terry asked the manager for new work, having finished her previous tasks, and was told that she could leave early instead. She was never recalled, but received a terminating check in the mail. Several days after the same conversation with the plant manager, the latter approached Williams to tell her that if she wanted to quit, as she had mentioned she might, she could do so. When she replied that she had decided to remain, the manager commented: "Well, I already told them that you are for the Union." Shortly thereafter she was fired.

(d) Marcene Fussell was discharged about a month after the union election. She was approached by her supervisor the day before the election and asked if she favored the union. She denied that she did, but in fact she later participated in the election as a union observer. The justification given for her discharge was that she had committed errors costing the Company "thousands of dollars," but the testimony was contradictory and confused as to precisely what those errors were and whether Fussell was ever warned about them. Fussell herself testified that she committed no more serious errors than were committed by others who worked with her and were not discharged.

■ The evidence thus summarized amply supports the Board's findings that each of these six discharges was discriminatorily motivated.

As to the alleged reemployment offers, the Board found that those thus far made by the Company to the seven employees have not been adequate. The Company disputes these findings and argues that the dates of those offers mark the end of the period for which back pay is due. Were this the only consequence

interrogating employees regarding union activity); both cases enforced, 437 F.2d 956 (6th Cir. 1971). *See also* NLRB v. Hickman

Garment Company, 471 F.2d 611 (6th Cir. 1972) (civil contempt proceeding to enforce 184 NLRB 864 and 184 NLRB 888, *supra*).

of the Company's having already made adequate offers of reinstatement, our review of the matter might better await the outcome of compliance proceedings. *See* NLRB v. C. C. C. Associates, Inc., 306 F.2d 534, 539–40 (2d Cir. 1962). It appears, however, that the Board's orders to the Company to offer reinstatement rest upon final determinations that it has not already done so. The question is thus properly before us.

 It is not disputed that within seven months after it had discharged the six employees named in the first Board order, the Company wrote to each of them offering reemployment. Neither is it disputed, however, that the employees were invited to return only as new employees without seniority and other benefits they had accumulated before being discharged. It was for this reason that the Board considered the offers inadequate.

The Board's position is correct. The purpose of requiring reinstatement, as the word implies, is to undo the employer's wrong by restoring the employees to the position they occupied before the wrong occurred. As the Ninth Circuit recently said of employees ˙unlawfully fired after a protest demonstration, "[t]hey never ceased being employees." Shelly & Anderson Furniture Manufacturing, Inc. v. NLRB, 497 F.2d 1200, 1205 (1974). *See also* NLRB v. Hilton Mobile Homes, 387 F.2d 7, 10–11 (8th Cir. 1967); NLRB v. American Manufacturing Co., 106 F.2d 61, 68 (2d Cir. 1939).

Slightly more plausible, at least on its face, is the claim that a valid offer of reinstatement was made to Roger Durban, the subject of the second Board order under review. He received a letter, following his discharge, stating that the Company's request that he return to work was "unequivocal" and subject only to the ostensibly reasonable condition that he "adhere to the plant's rules and regulations." But the Board found that Durban had in fact been fired for union activities, and specifically for attempting to compile a list of employee names, first from the management itself and then from the plant's timecard rack. The Company's pretext had been that, in doing so, he had violated a plant rule. In fact no such rule existed.

 The Board therefore concluded, upon substantial evidence, that the condition actually stated in the letter was that Durban not resume such union activities. That such a condition invalidates the offer goes almost without saying. *See* NLRB v. Goya Foods, Inc., 303 F.2d 442, 443 (2d Cir.), cert. denied, 371 U.S. 911, 83 S.Ct. 256, 9 L.Ed.2d 171 (1962) (employer could not condition reinstatement on acceptance of independent broker system designed to defeat unionization); NLRB v. Cowell Portland Cement Co., 148 F.2d 237, 245 (9th Cir.), cert. denied, 326 U.S. 735, 66 S.Ct. 44, 90 L.Ed. 438 (1945) (employer could not condition reinstatement after strike on employees' joining particular union).