600 F.2d 918
 101 L.R.R.M. (BNA) 2014, 195 U.S.App.D.C. 104,
86 Lab.Cas. P 11,252
 ROAD SPRINKLER FITTERS LOCAL UNION NO. 669, UNITED
ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF the
PLUMBING AND PIPEFITTING INDUSTRY OF the
UNITED STATES AND CANADA,
AFL-CIO, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
A-1 Fire Protection, Inc., et al., Intervenors.
A-1 FIRE PROTECTION, INC. and Corcoran Automatic Sprinklers,
Inc., Petitioners,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
 Nos. 77-1948, 77-1977.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Jan. 8, 1979.
Decided April 11, 1979.
 
 Angelo V. Arcadipane, Washington, D. C., with whom William W. Osborne, Jr., Washington, D. C., was on brief, for petitioner in No. 77-1948.
 Hiram S. Grossman, Flint, Mich., for petitioners in No. 77-1977 and intervenors in No. 77-1948.
 David F. Zorensky, Atty., N. L. R. B., Washington, D. C., with whom John S. Irving, Gen. Counsel, Carl L. Taylor, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, and William R. Stewart, Deputy Asst. Gen. Counsel, N. L. R. B., Washington, D. C., were on brief, for respondent.
 Before TAMM and WILKEY, Circuit Judges, and BARRINGTON D. PARKER,* United States District Judge for the District of Columbia.
 Opinion for the court filed by TAMM, Circuit Judge.
 TAMM, Circuit Judge:
 
 
 1
 We face cross-petitions for review of a decision of the National Labor Relations Board (Board). We remand the Board's decision that Corcoran Automatic Sprinklers, Inc. (CAS) and A-1 Fire Protection, Inc. (A-1) did not violate section 8(a)(5) of the National Labor Relations Act (Act) by refusing to bargain with the Road Sprinkler Fitters Local 669, United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada (AFL-CIO), (Local 669). We do so because the Board, without explanation, failed to apply the "clear and unmistakable" waiver standard to discern whether a union had forfeited its rights under section 8(a) (5). We affirm the Board's decision that CAS and A-1 did, however, violate sections 8(a)(3) and 8(a)(4) of the Act by retaliating against a union member.
 
 
 2
 * In 1973, George Corcoran formed two corporations, CAS and A-1, to install fire sprinklers. Corcoran intended to carry on a "double breasted" operation,[1] which would allow the non-union company, A-1, to bid on installation jobs that did not require union contractors, and allow CAS to bid on jobs that required union contractors. Soon after the corporations were formed, Corcoran, the owner and president of both corporations, entered into a contract with Local 669 covering CAS's employees who install and maintain fire protection systems. The union was not aware of the existence of A-1 when it signed the CAS contract. Later that year, however, Roy Pantall, Local 669's business agent, learned of A-1 and advised Corcoran that A-1 could not bid on non-union work because such work belonged to the union.
 
 
 3
 A-1 began hiring employees to install and maintain fire protection systems in 1975. In January 1975, Corcoran told Pantall that he was forced to lay off CAS employees, but could hire them to work for A-1. After Pantall grudgingly assented to the arrangement, Corcoran employed a few men to work for A-1. Although Corcoran paid them union scale wages, he did not compensate them for union benefits. Later in the same month, Pantall left his position as business agent for a new job with the union.
 
 
 4
 In late April 1975, Michael Johnson became the new union business agent, and, on May 1, 1975, Corcoran entered into a second contract with Local 669 covering CAS employees. Before signing the agreement, the union did not request that the contract cover A-1 or its employees. Johnson later testified that Pantall had not told him that A-1 was engaged in installation work.
 
 
 5
 By late fall, the union undoubtedly knew that A-1 was operating as a non-union company installing fire protection systems. In November, the union demanded that CAS and A-1 employees be treated as a single bargaining unit, and that the 1975 collective bargaining agreement be applied to A-1. See Joint Appendix (J.A.) at 349. When Corcoran refused to comply with the demand, Local 669 filed unfair labor charges against CAS and A-1. Id. at 284. The union alleged that CAS and A-1 violated the duty to bargain by withdrawing work from CAS and by refusing to recognize that A-1 employees were covered by the 1975 contract.
 
 
 6
 Before learning of the union's charges, Corcoran suggested to Johnson that their differences could be resolved if an A-1 job was subcontracted to CAS and if Michael Nunn, a union member, was employed on the job. After receiving notice of the union's charges, Corcoran decided to retain the job with A-1 and refused to employ Nunn. The union then filed new charges against CAS and A-1.
 
 
 7
 An administrative law judge (ALJ) held that the refusal to recognize the union as the collective bargaining representative of all employees and the transfer of work from CAS to A-1 violated section 8(a)(5) of the Act.[2] The ALJ found that CAS and A-1 formed a single employer for collective bargaining purposes, that Corcoran had changed work assignments to reduce the amount of work for CAS, and that the sprinkler fitters of CAS and A-1 together formed a single appropriate bargaining unit. Id. at 415-17. The ALJ confronted the issue that has become the focus of this petition for review when he held that the union had not engaged in any actions that would, by estoppel or waiver theories, forestall a finding that the employer violated section 8(a)(5). Finally, the ALJ found that the employer had violated sections 8(a)(3)[3] and 8(a)(4)[4] by refusing to hire Michael Nunn in retaliation for the union's filing of an unfair labor practice charge. Id. at 419-20.
 
 
 8
 The Board accepted the ALJ's findings of fact and affirmed his holding that the refusal to hire Michael Nunn violated sections 8(a)(3) and 8(a)(4) of the Act. A-1 Fire Protection, Inc., 233 N.L.R.B. No. 9, at 1-2 n.2 (1977). The Board held, however, that the employer did not violate section 8(a)(5) either by refusing to extend the terms of the CAS collective bargaining agreement to A-1 or by transferring work from CAS to A-1. Id. at 2.
 
 
 9
 The Board held that the union had, by its prior actions, given up the right to demand that the CAS agreement apply to A-1 workers. Specifically, the Board decided that the parties had not intended the 1975 agreement to cover A-1 employees and that the union, "at least inferentially, stipulated as to the appropriateness of the unit." Id. at 5. With respect to the ALJ's conclusion that Corcoran violated section 8(a)(5) by transferring work from CAS to A-1, the Board stated that Corcoran was free to use CAS or A-1 in any fashion he saw fit, and that the union had accepted the "double breasted" situation. Id. at 6.
 
 
 10
 In this court, the union petitions for review of the Board's holding that the employer did not violate section 8(a)(5), and the employer petitions for review of the ruling that it did violate sections 8(a)(3) and 8(a)(4). We must uphold the Board's decision if its findings are supported by substantial evidence on the record as a whole. See Oil, Chemical & Atomic Workers International Union, Local 4-243 v. NLRB, 124 U.S.App.D.C. 113, 115, 362 F.2d 943, 945-46 (1966); See also Midwest Regional Joint Board v. NLRB, 183 U.S.App.D.C. 413, 417, 564 F.2d 434, 438 (1977).
 
 II
 
 11
 The central point in dispute in this case is the proper legal standard for determining whether the union relinquished its right to claim that the 1975 agreement applied to A-1 employees when it signed a collective bargaining agreement with CAS in May 1975. The union argues that the collective bargaining agreement could act as a bar only if it constitutes a " clear and unmistakable waiver" of its statutory rights under section 8(a)(5) of the Act. The Board contends that the question is merely one of contract interpretation. The Board states, the "Union should not now be permitted to avoid the terms of the contract or the scope of the unit to which it voluntarily agreed by claiming an unfair labor practice in (Corcoran's) refusal to extend the CAS contract to A-1." A-1 Fire Protection, Inc., 233 N.L.R.B. No. 9 at 5.
 
 
 12
 The dispute over legal theory may affect the outcome. This court has stated that a union will not be held to have foregone a statutory right absent a "clear and unmistakable" waiver. Office & Professional Employees International Union, Local 425 v. NLRB, 136 U.S.App.D.C. 12, 19, 419 F.2d 314, 321 (1969); International Union, UAW v. NLRB, 127 U.S.App.D.C. 97, 99, 381 F.2d 265, 267, Cert. denied, 389 U.S. 857, 88 S.Ct. 82, 19 L.Ed.2d 122 (1967); See also Retail Clerks International Association, Local 455 v. NLRB, 166 U.S.App.D.C. 422, 426 n.15, 510 F.2d 802, 806 n.15 (1975); NLRB v. Die Supply Corp., 393 F.2d 462, 467 (1st Cir. 1968). The Board's present approach, on the other hand, abolishes any presumption against the loss of section 8(a)(5) rights, and reduces the question to a simple matter of contract interpretation. See Temple-Eastex, Inc., 228 N.L.R.B. 203, 209 & n.1 (1977), Reversed on other grounds, sub nom. NLRB v. Temple-Eastex, Inc., 579 F.2d 932 (5th Cir. 1978); B&B Industries, Inc., 162 N.L.R.B. 832, 835 (1967).
 
 
 13
 The Board, however, contends that it did not apply a waiver standard but simply held that the union cannot use the contract with CAS to support its contention that the employer has an obligation to bargain with it as the representative of A-1 employees. Brief for Respondents at 27. We have difficulty understanding how the factual situation facing the Board differs from the traditional waiver situation. No distinction exists between the effect of the Board's theory and use of the waiver standard in this court's earlier cases.
 
 
 14
 In International Union, UAW v. NLRB, 127 U.S.App.D.C. at 99, 381 F.2d at 267, this court considered a contractual provision that provided " 'the methods, processes and means of manufacturing are solely and exclusively the responsibility of the (employer).' " In deciding whether the contractual agreement precluded a union's section 8(a)(5) challenge to the contracting out of jobs, this court applied the "clear and unmistakable" waiver test, and held that the contract did not constitute a waiver. Id. Similarly, in Office & Professional Employees International Union, Local 425 v. NLRB, 136 U.S.App.D.C. at 19, 419 F.2d at 321, union members had performed auditing duties that the employer later assigned to non-union workers. Faced with contractual silence on whether such duties could be assigned to non-union employees, this court refused to find a "clear and unmistakable" waiver of section 8(a)(5) rights. Finally, in Retail Clerks International Association, Local 455 v. NLRB, 166 U.S.App.D.C. at 425-26 & n.15, 510 F.2d at 805-06 & n.15, this court found that the "additional store clause" of a contract barred an employer from filing a representation petition because the clause amounted to a "clear and unmistakable" waiver of the employer's right to a Board conducted election in an additional store. In all three cases, this court applied the "clear and unmistakable" test to situations in which contract terms arguably affected the parties' obligations under section 8(a) (5). We perceive no distinction between these cases and the case before us, nor has the Board pointed to any consideration that would justify the abandonment of the traditional waiver standard.
 
 
 15
 The Board's own decision in Radioear, Corp., 199 N.L.R.B. 1161 (1972), supplemental opinion, 214 N.L.R.B. 362 (1974), illustrates that even the Board itself has disagreed over whether to apply the waiver or contract interpretation standard. In that case, the Board held that it would not apply the "clear and unequivocal waiver" standard to a union's claim that the employer had unilaterally abolished an annual holiday bonus. The Board stated that "(w)here the parties, as here, have engaged in the collective-bargaining process . . . and have executed a(n) . . . agreement, setting forth the terms of their bargain, we are unwilling to ignore what has taken place at the bargaining table and decide the parties' dispute on the basis of a simplistic formula . . . ." Id.[5] Dissenting Members Fanning and Jenkins argued that the traditional waiver standard should have been applied.[6] Id. at 1162-63.
 
 
 16
 Radioear may represent a general trend away from use of the "clear and unmistakable" waiver standard.[7] Indeed, the Board's decision in this case appears to be consistent with that thesis. Nevertheless, we will not allow an administrative agency to abandon its past principles without reasoned analysis. We cannot perform our duties as a reviewing court unless the Board explains why the waiver standard should be changed, and how the new standard furthers the agency's statutory mandate. See Columbia Broadcasting System v. FCC, 147 U.S.App.D.C. 175, 183, 454 F.2d 1018, 1026 (1971). In this case, the Board has not even acknowledged the existence of the "clear and unmistakable" waiver principle, yet alone explained its decision not to apply it. Faced with such recalcitrance, we have no choice but to remand for explanation and application of the proper legal standard.[8]
 
 III
 
 17
 The Board affirmed the ALJ's conclusion that the employer violated sections 8(a)(3) and 8(a)(4) of the Act by withdrawing an offer to employ Michael Nunn upon receiving notice of the union's section 8(a)(5) charge. The conclusion that the action was intended to discourage union membership, and to punish Nunn for the union's action is supported by the ALJ's finding that " George Corcoran took the Alma College job away from (CAS) and from Union member Nunn, and returned the job to A-1 in retaliation against the Union's filing of unfair labor practice charges . . . ." J.A. at 420.
 
 
 18
 In this court, the employer contends that it simply attempted to maintain the status quo by keeping the project with A-1 instead of shifting it to CAS. This argument blinks reality, for it is uncontroverted that Corcoran refused to follow through with his prior intention to employ Nunn and subcontract a job to CAS because of the union's action. Any doubt of Corcoran's motivation is dispelled by his own statement:
 
 
 19
 After getting the charges I decided to do the job as A-1 and not subcontract it to (CAS). I didn't feel there was any reason for me to show the union a sign of good faith after they filed the charges against me.
 
 
 20
 Id. at 236. Corcoran's obvious anti-union animus and his undisputed refusal to grant employment to Nunn provide ample support for the Board's conclusion that he violated sections 8(a)(3) and 8(a)(4) of the Act. See Ridgely Manufacturing Co. v. NLRB, 166 U.S.App.D.C. 232, 233, 510 F.2d 185, 186 (1975) (per curiam); John Hancock Mutual Life Insurance Co. v. NLRB, 89 U.S.App.D.C. 261, 263-64, 191 F.2d 483, 485-86 (1951).[9]
 
 IV
 
 21
 In accordance with the foregoing opinion, we therefore
 
 
 22
 Remand in part; Affirm in part.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. § 292(a)
 
 
 [1]
 See Local 627, Int'l Union of Operating Eng'rs v. NLRB, 194 U.S.App.D.C. 37, 38-39 n.1, 595 F.2d 844, 845-46, n.1 No. 77-2031 (March 6, 1979)
 
 
 [2]
 Section 8(a)(5), 29 U.S.C. § 158(a)(5) (1976) provides that "(i)t shall be an unfair labor practice for an employer . . . to refuse to bargain collectively with the representatives of his employees . . . ."
 
 
 [3]
 Section 8(a)(3), 29 U.S.C. § 158(a)(3) (1976) provides that "(i)t shall be an unfair labor practice for an employer . . . by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in a labor organization . . . ."
 
 
 [4]
 Section 8(a)(4), 29 U.S.C. § 158(a)(4) (1976) provides that "(i)t shall be an unfair labor practice for an employer . . . to discharge or otherwise discriminate against an employee because he has filed charges or given testimony under this subchapter."
 
 
 [5]
 The National Labor Relations Board (Board), applying the doctrine of Collyer Insulated Wire, 192 N.L.R.B. 837 (1971), dismissed the case to allow for arbitration because the factors relevant to contract interpretation are factors traditionally used by arbitrators. Radioear Corp., 199 N.L.R.B. 1161 & n.1 (1972). They include: "(a) the precise wording of, and emphasis placed upon, any . . . clause (in which the union agrees that the employer shall not be obligated to bargain with respect to any subject not specifically covered by the agreement); (b) other proposals advanced and accepted or rejected during bargaining; (c) the completeness of the bargaining agreement as an 'integration' hence the applicability or inapplicability of the parol evidence rule; and (d) practices by the same parties, or other parties, under other collective-bargaining agreements." Id. at 1161. Use of the Radioear factors would, therefore, allow the Board to defer to arbitration in some cases involving unilateral employer action amounting to a refusal to bargain without the necessity of deciding whether the contract constituted a clear and unmistakable waiver of one party's statutory rights. See Isaacson & Zifchak, Agency Deferral to Private Arbitration of Employment Disputes, 73 Colum.L.Rev. 1383, 1393-96 (1973). The scope of the Collyer doctrine, however, remains unsettled. See General Amer. Transp. Corp., 228 N.L.R.B. 808 (1977)
 
 
 [6]
 The dissenters would not have applied the Collyer doctrine. Radioear Corp., 199 N.L.R.B. at 1162-63
 
 
 [7]
 See R. Gorman, Labor Law 480 (1976) ("the Board has liberalized its tests for waiver, holding in effect that if 'contract construction' by an examination of the written agreement, negotiating history and past practices demonstrates that employer action is not a breach of contract, it will not likely be a violation of section 8(a)(5) either"); Id. at 477-80; C. Morris, The Developing Labor Law 332-35 (1971); Id. at 187-88 (Cum.Supp.1971-75); Nelson & Howard, The Duty to Bargain During the Term of An Existing Agreement, 27 Labor L.J. 573, 584-87 (1976); Isaacson & Zifchak, Supra note 5, at 1395-96 & n.71
 
 
 [8]
 We also remand the Board's holding that the employer did not violate section 8(a)(5) by transferring work from CAS to A-1. The Board based this conclusion on its belief that the Union "was cognizant of and accepted" the double breasted situation. A-1 Fire Protection, Inc., 233 N.L.R.B. No. 9, at 6 (1977). Because this finding is premised on the Board's contract interpretation theory, we remand for reconsideration
 
 
 [9]
 The cases cited by the employer in its petition for review are inapplicable. Specifically, the Board in McLain Trucking, Inc., 194 N.L.R.B. 16, 18 (1971), found no discriminatory intent in a employer's failure to hire. In Shop Rite Foods, Inc., 216 N.L.R.B. 256 (1975), the Board found that the withdrawal of a conditional reinstatement of employees was not discriminatory because the condition, approval of a settlement by a National Labor Relations Board Regional Director, was not fulfilled